UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID P. FOSTER                    CIVIL ACTION

VERSUS

HUNTINGTON INGALLS INCORPORATED

## COMPLAINT

The complaint of David P. Foster, a resident of this State and domiciled in Tangipahoa Parish, respectfully represents:

1.

Made defendant is: **HUNTINGTON INGALLS INCORPORATED,** successor in interest to Northrup Grumman Ship Systems. Defendant is a foreign corporation authorized to do and doing business in this state at a business location in Jefferson Parish, Louisiana. Defendant is domiciled in the State of Delaware and defendant's principal place of business is in the State of Virginia.

2.

This court has jurisdiction because the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00 as provided by 28 USC § 1332(a)(1).

## STATEMENT OF FACT

3.

Plaintiff adopts by reference and incorporates all allegations of fact made in the Complaint filed in civil action No. 12-cv-02548-JTM-SS("the first lawsuit").

4.

In 2011, Foster was assigned to close out NCRs on three different vessels under construction-LPD 21, 23, and 25, plus the unit area where pre-fabricated components were assembled. Foster estimates that his crew was responsible for closing out over 20,000 NCRs satisfactorily. Foster was fired for one NCR which was not assigned to him.

5.

Foster was responsible only for P1/P2 weld repairs. P1 refers to piping systems with temperatures in excess of 300 degrees or in excess of 600 pounds per square inch. P2 refers to piping systems with temperatures less than 300 degrees or less than 600 pounds per square inch.

6.

On or about June 28, 2011, plaintiff received a document styled "Final Written Warning" concerning an incident which occurred involving plaintiff re-rating an employee.

7.

Defendant's employee, O.L. Walley, said that he told Foster to stop re-rating David Hartford on June 16, 2011, and that Foster had re-rated Hartford on June 17, 2011.

8.

In truth and in fact, the last day Foster re-rated Hartford was June 16, 2011, the same day Walley told Foster to stop re-rating Hartford.

9.

Walley had actual knowledge that his accusation was false. Nevertheless, Walley proceeded to give plaintiff a final written warning.

10.

Walley had to clear this action with defendant's employee, Neil McKeever in Human Resources.

11.

Both Walley and McKeever could have easily accessed the database to determine the last day Hartford was re-rated.

12.

Neither Walley nor McKeever made any attempt to confirm that Foster had actually disobeyed Walley's order. Both of them just took it for granted that Foster was guilty and gave him a final written warning.

13.

On September 28, 2011, HII notified Foster that his employment was terminated For Falsifying Company Records and for Gross Negligence.("the separation notice"). HII alleged then- and now argues that it is true-that the plaintiff **failed to perform work as directed, that he falsified, altered, or omitted pertinent information, gave false replies or testimony to official company representatives, refused to provide necessary information… and that his actions and failed leadership have resulted in costly rework and schedule delays.**

14.

Foster had under his direct supervision one re-rated foreman and two clerks. Plaintiff's job was to build packages of discrete tasks and assign the tasks to a general foreman. The general foreman would then assign the work to foreman who would direct welders and pipefitters to accomplish the task. Once the task was complete, the foreman would report to the general foreman who would report to Foster.

15.

Foster or someone at his direction would then arrange for a Quality Control employee and a representative of the United States Navy to visually inspect the task and then sign off on the task as completed.

16.

Irene Torres was responsible for maintaining paperwork on all NCRs closed out by Foster. The NCR in question is not in Torres' file.

17.

NCR 0002014770 is not a P1/P2 weld repair, but rather, is a Pipe Detail issue. The pertinent documents show in the Cause field: **PIPE NOT INSTALLED AS PER DWG(DRAWING).** This is a Pipe Detail("PD")issue. It is not a P1/P2 Weld Repair issue.

18.

Foster was assigned to P1/P2 Weld repair issues only. Foster did not have access to the database to make entries on NCRs. Foster did not direct any entry to be made concerning this NCR to anyone.

19.

The only corrective action indicated in defendant's records concerning this NCR was that the PD drawings **for future construction of the next ship in the series, LPD 26, would be revised:**

> **IT WAS NOT REQUIRED FOR ENGINEERING TO HAVE CHANGE PD SHEET FOR LPD 22-25. ENGINEERING IS CURRENTLY TAKING CORRECTED ACTION TO UPDATE DRAWING TO MEET SEC REQUIREMENTS FOR LPD 26.** .

20.

In the so-called "investigation" conducted by Neil McKeever, defendant's employee, Bruce Knowles, gave McKeever false information about the NCR.

4

Knowles told McKeever…**an NCR had been generated in late 2010 because a pipe in the LPD23 fuel room needed to be reworked according to new specifications issued by the Navy. David Foster signed off on the completion of the NCR, but a subsequent inspection showed that no changes were made to the pipe. It will significantly impact cost and schedule to make the repair at this point in time, because fuel has already been loaded on the ship, and it will have to be flushed before the correction can be made.**

21.

Knowles was the LPD 23 Program Manager. As Program Manager, Knowles knew that the NCR in question was a Pipe Detail issue in the fuel transfer system. Knowles knew that the Navy had not issued any new specifications about the pipe.

22.

Knowles knew that the Navy had issued a waiver for all installed non-conforming fuel transfer piping on April 7, 2011. Knowles knew that there was no possibility that the fuel system would have to be flushed or that the repair would have to be made. Knowles also knew that Foster was assigned to P1/P2 weld repair and the NCR in question was not a P1/P2 issue.

23.

In the investigation conducted by McKeever, he failed to confirm the accuracy of the information supplied to him by Bruce Knowles.

24.

McKeever also failed to interview other persons knowledgeable of the circumstances, particularly John Lockshaw, Foster's immediate supervisor, and Harry Forrester, the senior technical engineer. Had McKeever interviewed Lockshaw and Forrester, he would have learned that there was no need to do anything and that the pipe as installed was acceptable.

25.

Had McKeever actually interviewed Jeff Miller, Quality Engineering Manager, McKeever would have learned that there was a good deal of " confusion and complexity" in the re-inspection and repair effort and that it would be a "mistake" for the Company to fire Foster over this one isolated incident.

26.

McKeever's report confirms that the NCR was never assigned to Foster: **NCR # 0002014770 was not listed on the spreadsheet because the weld-size was not an issue.**

27.

On September 28, 2011, plaintiff was notified by the defendant that his employment was terminated For Falsifying Company Records and for Gross Negligence.("the separation notice").

28.

The separation notice alleges that the plaintiff **failed to perform work as directed, that he falsified, altered, or omitted pertinent information, gave false replies or testimony to official company representatives, refused to provide necessary information… and that his actions and failed leadership have resulted in costly rework and schedule delays.**

29.

Plaintiff was the Pipe Superintendent. He was a member of management. He was responsible for supervising employees under his direction. He was not personally responsible to carry out manual inspections but rather it was the responsibility of persons the plaintiff supervised.

30.

The item in question was a fitting on a fuel line on a ship under construction for the United States Navy("the customer").

31.

The customer had accepted the work. The vessel had been fueled on or about April, 2011, and had undergone sea trials prior to the discovery of the alleged discrepancy.

32.

The customer had issued a waiver for all systems which functioned without a leak. The system did not leak. The system was modified to conform to the "as built" product and carried forward in the design of the succeeding ships of the same class.

## FIRST CAUSE OF ACTION
## DEFAMATION OF CHARACTER

33.

All of the allegations made by the defendant and its employees as described in this complaint, and repeated in pleadings filed into the record of the first lawsuit which accuse plaintiff of misconduct, and as repeated by defendant's employees to other persons are hereafter referred to as " the defamatory statements".

34.

The defamatory statements are false.

35.

The defamatory statements were made with malice.

36.

The defamatory statements were published.

37.

The defamatory statements caused plaintiff injury.

38.

The defamatory statements were made with reckless disregard for the truth and without a reasonable basis for thinking that the statements were true.

39.

Plaintiff's injury is loss of reputation, past and future; personal embarrassment and humiliation, past and future; mental and emotional suffering, past and future; loss of employment, past and future; loss of employability, past and future.

40.

All of the actions complained of in the first lawsuit and in this complaint were actions taken by defendant's employees who were acting within the course and scope of their employment and defendant is therefore liable for the injury and damage caused by the wrongful acts of its employees.

## DEMAND FOR JUDGMENT

WHEREFORE plaintiff prays that this court:

(1) Order the defendant to make the plaintiff whole by paying plaintiff such monetary and non-monetary benefits as may be determined to be due and owing at the time of trial;

(2) Order the defendant to pay the plaintiff a sum in excess of $10,000 as compensatory damages;

(3) Award pre-judgment interest as provided by law;

(4) Grant such other and further relief to the plaintiff as the Court deems just and proper;

(5) Grant a trial by jury.

        HOGAN & HOGAN

        ***THOMAS J. HOGAN, JR.***

        _____
        THOMAS J. HOGAN, JR., T.A.
        Bar Roll No. 06908
        P. O. Box 1274
        Hammond, LA 70404
        (985)542-7730

        thogan48@bellsouth.net

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DAVID P. FOSTER**                    **CIVIL ACTION**

**VERSUS**

**HUNTINGTON INGALLS INCORPORATED**

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands trial by jury.

                              HOGAN & HOGAN

                              ***THOMAS J. HOGAN, JR.***
                              _____
                              THOMAS J. HOGAN, JR., T.A.
                              Bar Roll No.06908
                              P. O. Box 1274
                              Hammond, LA 70404
                              (985)542-7730
                              thogan48@bellsouth.net

                              Attorney for Plaintiff

**PLAINTIFF WILL REQUEST DEFENDANT WAIVE SUMMONS**